CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 21 2006

JOHN F. CORCORAN, CLERK
BY:
　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MAURICE PRESTON SCOTT,<br>　　Plaintiff, | Civil Action No. 7:06cv000367 |
| v. | **MEMORANDUM OPINION** |
| MECKLENBURG CORRECTIONAL<br>CENTER, et al.,<br>　　Defendants. | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Plaintiff Maurice Preston Scott, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Scott alleges that while temporarily housed in the Mecklenburg Correctional Center Receiving Unit his First and Fourteenth Amendment rights were violated because defendants prohibited him from carrying a Bible onto the recreation yard and refused to allow him to participate in a religious correspondence course. Scott makes no specific request for relief. Upon review of the record, I conclude that the plaintiff has not stated a claim upon which relief can be granted and, therefore, dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

I.

Scott alleges that while housed at the Mecklenburg Correctional Center Receiving Unit, he was informed that inmates were only allowed to take one pack of cigarettes, one lighter, one Walkman with one cassette tape and headphones, and one deck of cards onto the recreation yard.[1] Accordingly, he was prohibited from bringing his Bible or any other religious materials with him onto the yard. Scott concedes he was informed that inmates were limited to the above mentioned

---

[1] Scott is now housed at the Sussex I State Prison.

items because of the potential security threat posed by concealed weapons in books, magazines, and other items.

Scott also complains that defendants refused to "approve" his continued participation in a Bible correspondence course in which he had enrolled prior to his transfer to the Mecklenburg Correctional Center Receiving Unit. Scott admits prison officials advised him that all inmates housed in the receiving unit are prohibited from participating in correspondence courses because of the transient nature of the inmates housed in that unit. Nonetheless, despite the general prohibition on correspondence courses, Scott concedes that he could send any size parcel of mail to the proprietors of the religious course in which he was enrolled and could receive any mail addressed to him from those proprietors as long as it weighed one ounce or less.

## II.

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if the complaint is frivolous, malicious, or if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988).

### A. First Amendment Claims

Scott alleges that defendants denied him the right to free exercise under the First Amendment by prohibiting him from taking his Bible onto the recreation yard and for refusing to "approve" his continued participation in a religious correspondence course. It is well established

2

that a prisoner retains his federal constitutional right to freedom of religion, and prisoners must be afforded "reasonable" opportunity to practice their religion while incarcerated. Cruz v. Beto, 405 U.S. 319, 322 (1972) However, even when religious freedoms are at issue, prison administrators must be afforded "latitude in the administration of prison affairs." Id. In evaluating a constitutional challenge to prison regulations the court must consider the following factors: 1) whether there is a logical connection between the regulation and a legitimate governmental interest; 2) if the inmate has an alternate means of exercising his religious right; and 3) if accommodating the inmate's right would severely impact other inmates, prison officials, and the allocation of prison resources. O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-52 (1987).

Although Scott complains that he was not allowed to take his Bible onto the recreation yard, he concedes that inmates were not permitted to take any books onto the recreation yard for security reasons. It is clear that prison administrators have a legitimate interest in maintaining safety and order within the institution. See Hodges v. Virginia, 871 F.Supp. 873, 876 (W.D.Va. 1994), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4 th Cir. 1996)(finding that security, discipline, order, public safety, and rehabilitation interests need no defense). Further, the court finds that if inmates were permitted to take books, including religious materials, onto the yard, prison officials would expend significant amounts of man power in thoroughly searching each item an inmate sought to bring with him for contraband and/or concealed weapons. Accordingly, as Scott concedes that his access to his Bible was only limited while he was on the recreation yard and as the defendants have a legitimate and reasonable interest in limiting items taken onto the recreation yard, I find that Scott has failed to allege any

3

facts which reasonably suggest that defendants have interfered with his First Amendment rights.

Likewise, Scott has failed to allege any facts which suggest that defendants' disapproval of his continuing participation in a religious correspondence course violated his First Amendment rights. Scott concedes that because of the transient nature of inmates housed in the Mecklenburg Correctional Center Receiving Unit and the potential for voluminous amounts of incoming mail addressed to inmates no longer housed in the receiving unit, those inmates are not allowed to participate in correspondence courses, religious or otherwise. However, Scott admits that he could send any size parcel of mail to the proprietors of the correspondence course in which he was enrolled and could receive mail from those proprietors as long as it weighed one ounce or less. I find that prison officials have a legitimate security and personnel resource interest in limiting the size of incoming mail parcels and in restricting transient inmates' participation in long term correspondence courses. Further, as Scott concedes that despite the disapproval he was still able to participate in the religious correspondence course in which he was enrolled, I find that he has failed to allege any facts which suggest that the defendants' policy actually hindered his free exercise rights.

### B. Fourteenth Amendment Claims

Scott also claims that the defendants' limitation on items permitted on the recreation yard and general prohibition of participation in correspondence courses violated his equal protection rights under the Fourteenth Amendment. To succeed on an equal protection claim, a plaintiff first must demonstrate that he or she has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful

4

discrimination; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001).

Scott concedes that institutional policy prohibits all inmates from bringing any written materials onto the recreation yard and from participating in all correspondence courses, regardless of religious or secular character. Accordingly, Scott cannot show that the policy limiting items brought onto the recreation yard or participation in correspondence courses is motivated by a discriminatory purpose. See Cruz v. Beto, 405 U.S. 319, 322 (1972). Therefore, he has failed to state a constitutional claim under the Equal Protection Clause of the Fourteenth Amendment.

## III.

Based on the foregoing, I find that Scott has not presented any claims that constitute a violation of his constitutional rights. Therefore, I dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Scott is hereby advised that this dismissal constitutes a third "strike" pursuant to 28 U.S.C. §1915(g).[2] Scott is further advised that he cannot file any future civil actions without

---

[2]Section 1915(g), enacted as part of the Prison Litigation Reform Act of 1996 ("PLRA"), provides that a prisoner may not bring a civil action without prepayment of the filing fee,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The court takes judicial notice of the fact that plaintiff has had at least two previous civil actions

prepayment of the $ 350.00 fee required for filing civil actions,[3] unless he demonstrates that he is "under imminent danger of serious physical injury." § 1915(g).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

ENTER: This 21st day of July, 2006.

/s/ Jackson L. Kiser
Senior United States District Judge

---

dismissed by the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. § 1915A(b)(1). See Scott v. Sussex I State Prison, Civil Action No. 7:06cv00369 (W.D. Va. July 6, 2006); Scott v. Blue Ridge Regional Jail Authority, et al., Civil Action No. 7:05cv00281 (W.D. Va. Sep. 30, 2005). The court thus finds that plaintiff now has at least three "strikes" within the meaning of 28 U.S.C. §1915(g).

[3] This fee is set by statute. See 28 U.S.C. § 1914(a).